```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ANGIE BOUCHARD,                              :
                                             :         04 Civ. 9978 (CSH)
                    Plaintiff,               :
                                             :         MEMORANDUM OPINION
          -against-                          :         AND ORDER
                                             :
NEW YORK ARCHDIOCESE,                        :
CARDINAL JOHN EGAN, CHURCH OF                :
OUR SAVIOR, FR. KENNEDY, FR.                 :
"JOHN DOE", and "JOHN DOE"                   :
RELIGIOUS ORDER,                             :
                                             :
                    Defendants.              :
------------------------------------------------------X
```

HAIGHT, Senior United States District Judge:

In this diversity action, Plaintiff Angie Bouchard has sued the Defendants for alleged misconduct relating to certain sexual transgressions she claims she suffered at the hands of Defendant Father Kennedy (first name unspecified), a Catholic priest. Pending before the Court are two multi-part motions: (1) a motion by the Archdiocese of New York s/h/a New York Archdiocese, Edward Cardinal Egan s/h/a Cardinal John Egan, and the Church of Our Savior (collectively, "the Church Defendants") to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and/or for summary judgment pursuant to Federal Rule of Civil Procedure 56 in favor of the Archdiocese and Egan, and to strike certain material from the Complaint pursuant to Federal Rule of Civil Procedure 12(f); and (2) a cross-motion by Plaintiff for a hearing and for sanctions and/or attorney's fees.

For the reasons that follow, the Church Defendants' motion is granted in part and denied in part, and Plaintiff's motion is denied in its entirety.

## BACKGROUND

According to Plaintiff, Father Kennedy is a Catholic priest who traveled from Sri Lanka to visit the Church of Our Savior in New York City, and was granted faculties[1] and dual employment with the Archdiocese. While Kennedy was at the church, Plaintiff claims that she met with him to discuss her past history of sexual abuse. Kennedy allegedly told Plaintiff that he had previously "cured" several women from different parts of the world of "all the problems they had pertaining to a past of sexual abuse." Amended Complaint ("Am. Compl.") ¶ 14. Plaintiff states that she and Kennedy then engaged in his purported treatment, which allegedly consisted of Kennedy instructing Plaintiff to use a handkerchief to "wipe away the abuse" from those areas where she had been touched by past abusers, while closing her eyes and "envision[ing] the abuser disappearing in fire or flames." *Id.* ¶ 15. According to Plaintiff, this happened on two separate occasions. Although Plaintiff allegedly told Kennedy that the activity "didn't feel right, and she was uncomfortable," Kennedy pushed her to continue, and touched her without her consent. *Id.* ¶ 16.

Kennedy also purportedly asked about Plaintiff's sexual history, which she reluctantly provided to him. According to Plaintiff, Kennedy said that his method was not working properly, and that they needed more privacy and a place with a bed to continue the process of dealing with the abuse. Plaintiff asserts that she was manipulated into volunteering her apartment, and sending her roommates away, despite her fear. At her apartment, Kennedy allegedly instructed Plaintiff to lie down on the bed and use the same method as before, while he sat near the bed in a chair.

---

[1] "Faculties are means by which the bishop of a diocese, or archbishop, confers permission to a visiting priest who labors in the diocese for the salvation of souls to hear confessions, say Mass, preach, and administer the sacraments of the Roman Catholic Church. The granting of faculties is a purely religious function." Affidavit of Reverend Monsignor Desmond O'Connor ¶ 2.

Additionally, Plaintiff claims that Kennedy stated he had to do one more thing to see whether she had been helped or not, which was "unbuckle [Plaintiff's] pants and with his hand bring her to orgasm," using his watch to time her. *Id.* ¶ 22. Plaintiff allegedly objected to this, but Kennedy told her it was the only way to prove she had been helped. According to Plaintiff, "[she] said no but he insisted and did this without her consent," all the while manipulating her with stories of his past successes with treating other women. *Id.* Kennedy allegedly "brought her to climax and timed her," and then proclaimed her cured. *Id.* Plaintiff claims he then told her to stand in front of the mirror with him, and that he then touched her breasts without her consent.

Plaintiff now claims that she was substantially harmed by this abuse. She also apparently claims that the Church Defendants knew or had reason to know that Kennedy had abusive tendencies, but nonetheless hired him and failed to supervise him or warn those with whom he might have contact. According to Plaintiff, the Church Defendants attempted to cover up Kennedy's wrongdoing by transferring him elsewhere.

For their part, certain of the Church Defendants dispute the existence of any sort of employment relationship with Kennedy. Monsignor O'Connor, the Director of the Office of Priest Personnel of the Archdiocese of New York, stated that he is responsible for receiving and processing applications for faculties from priests who are visiting the Archdiocese from other dioceses or orders, and that he never received any application or request from Kennedy for faculties, and that the Archdiocese never granted faculties to Kennedy. O'Connor Affidavit ¶¶ 2-3. According to O'Connor, he searched the records of the Archdiocese, and did not find any record of receiving an application for faculties from Kennedy. *Id.* ¶ 4. Moreover, O'Connor asserts he never even heard of Kennedy until 2004, when Plaintiff's allegations came to light, and that Kennedy was never

employed by the Archdiocese. *Id.* ¶ 5. Finally, O'Connor states that the Archdiocese never had any knowledge, and still has no knowledge, of any prior history of Kennedy. *Id.*

Father Rutler, the pastor of defendant Church of Our Savior since September 17, 2001, states that he does not know and has never met Kennedy, but that "[i]t appears that he was a foreign priest from Sri Lanka who visited the Church of our Savior for a short time during the summer of 2001," before Rutler became the parish pastor. Affidavit of Father George Rutler ¶¶ 2-3. According to Rutler, church records show that the church issued checks to Kennedy in August of 2001, apparently for religious services provided. *Id.* ¶¶ 4-5. Rutler asserts that the parish pastor is not required to seek approval from the Archdiocese before issuing such checks. *Id.* ¶ 5. According to Rutler, Father Hennessy, who signed the checks, and Monsignor O'Neill, who was the parish pastor during Rutler's time at the church, are both deceased. *Id.* ¶ 3.

In her Amended Complaint, Plaintiff has asserted against all defendants claims for negligence, intentional torts of harassment, battery, and sexual assault, negligent infliction of emotional distress, breach of fiduciary duty, and negligent hiring and supervision by the Church Defendants. The Church Defendants have moved to dismiss all claims, and/or for summary judgment in favor of the Archdiocese and Egan, on a number of theories.[2] Additionally, the Church Defendants seek to have stricken from the Amended Complaint certain allegedly baseless claims that they say are scandalous and immaterial.

---

[2] The Church Defendants also raise the possibility that the statute of limitations on certain actions may preclude some of Plaintiff's claims, but, as Plaintiff's Amended Complaint has not specified the dates upon which the alleged misconduct occurred, the Church Defendants do not rely on the statute of limitations defense in the current motion.

4

Plaintiff has filed a cross-motion for a hearing, for the imposition of sanctions, and/or for an award of attorney's fees.

## DISCUSSION

### I. The Church Defendants' Motion

#### A. Rule 12(b)(6)

##### 1. Standard of Review

The Church Defendants have moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim. The district court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). On a motion to dismiss, a district court must accept a plaintiff's well-pleaded factual allegations as true, *Papasan v. Allain,* 478 U.S. 265, 283 (1986), and such factual allegations must be "construed favorably to the plaintiff," *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir. 1991) (citations omitted). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal citation and quotation marks omitted). "The review of [a 12(b)(6)] motion is limited, and the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996) (internal citations and quotation marks omitted).

When deciding a motion to dismiss, the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiffs' possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. *See, e.g., Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir.2002).

## 2. The Church Defendants' Seduction Argument

The Church Defendants first argue that they can have no vicarious liability for the actions of Kennedy because his actions, while reprehensible, support a claim only for seduction, which cause of action was abolished in New York in 1935. *See* N.Y. Civ. Rights Law § 80-a. The Church Defendants cite *Coopersmith v. Gold*, 172 A.D.2d 982, 984 (3rd Dep't 1991), where the court describes seduction as "any conduct on the part of a man, without the use of force, in wrongfully inducing a woman to surrender to his sexual desires." In that case, the plaintiff patient asserted that the defendant therapist falsely counseled her in order to exploit her sexually. The plaintiff, however, testified that she consented to having sexual intercourse with the defendant. *See id.* Such is not the situation in the case at bar: amongst Plaintiff's allegations are the claims that Kennedy "touched her without her consent" and that, even after being told "no", Kennedy touched her sexually. Am. Compl. ¶¶ 16, 22. This sort of nonconsensual contact is not what was envisioned by the seduction cause of action. *See, e.g., Aadland v. Flynn*, 27 Misc. 2d 833 (N.Y. Sup. Ct. 1961), *aff'd*, 14 A.D.2d 837 (1st Dep't 1961) (court dismissed complaint as making a claim of seduction where plaintiff alleged that the defendant film star seduced her and induced her to commit repeated acts of debauchery).

6

Accordingly, I will not dismiss the Amended Complaint on the ground that Plaintiff's allegations at most make out a claim of seduction against Kennedy.

### 3. Plaintiff's Intentional Tort Claims

The Church Defendants next argue that Plaintiff's battery claim should be dismissed because it is premised upon seduction. As I have previously rejected the argument that the Amended Complaint only makes out a claim of seduction, I similarly reject the Church Defendants' argument that the battery claim cannot stand. "Battery is the intentional physical contact with another person without that person's consent." *Coopersmith*, 172 A.D.2d at 984 (citation omitted). As mentioned, Plaintiff has alleged nonconsensual touching against Kennedy.

However, the Church Defendants also argue that, as the Amended Complaint contains no allegations that the Church Defendants personally committed an assault or battery, Plaintiff must be seeking to hold them vicariously liable for the intentional torts of Kennedy. Even assuming some sort of employment relationship existed,[3] they say, the Church Defendants may not be held vicariously liable for the sexual misconduct of an employee-priest such as Kennedy, as such misconduct is clearly outside the scope of employment as a priest, and is unrelated to the furtherance of the Church Defendants' business. I agree, especially in light of the fact that Plaintiff concedes that Kennedy's conduct "was not a part of any religious or faith-based action that he was giving, or that [Plaintiff] sought," Am. Compl. ¶ 23. *See Steinborn v. Himmel*, 9 A.D.3d 531, 532-33 (3rd Dep't 2004) (where complaint alleges sexual assault by scoutmaster, defendants, even if fairly characterized as employers or principals of scoutmaster, could not be vicariously liable for the sexual

---

[3] As noted in text, certain of the Church Defendants dispute whether any sort of employment relationship existed between them and Kennedy.

assault, as such assault was clearly outside the scope of the duties of a scoutmaster); *Dia CC v. Ithaca City School Dist.*, 304 A.D.2d 955, 956 (3rd Dep't 2003) (same result where school district sued for sexual misconduct of teacher); *McKay v. Healthcare Underwriters. Mut. Ins. Co.*, 295 A.D.2d 686, 687-88 (3rd Dep't 2002) (same result where hospitals sued for sexual misconduct of healthcare workers). Therefore, the Church Defendants cannot be held vicariously liable for the sexual misconduct of Kennedy on *respondeat superior* grounds.[4]

### 4. Plaintiff's Negligent Hiring/Supervision Claims

Plaintiff, however, also appears to assert some conflated combination of claims for negligent hiring, retention, supervision, and/or failure to warn. It is true that, "[i]n instances where an employer cannot be held vicariously liable for its employee's torts, the employer can still be held liable under theories of negligent hiring, negligent retention, and negligent supervision. However, a necessary element of such causes of action is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 161 (2nd Dep't 1997); *see Samide v. Roman Catholic Diocese of Brooklyn*, 754 N.Y.S.2d 164, 176 (N.Y. Sup. Ct. 2003) (quoting *Kenneth R.*).

In the case at bar, Plaintiff does allege in the Amended Complaint that the Church Defendants knew or should have known of the abusive propensities of Kennedy, but still hired him or failed to supervise him or warn others with whom he might have contact. Accepting Plaintiff's allegations as true and construing them in her favor, Plaintiff has pleaded a claim for negligent hiring, retention,

---

[4] I also agree with the Church Defendants that, to the extent Plaintiff is attempting to assert a claim for common-law harassment, no such claim can be maintained, as "[t]here is no cognizable common-law claim for malicious harassment" in New York. *Gentile v. Allstate Ins. Co.*, 288 A.D.2d 180 (2nd Dep't 2001).

supervision, or failure to warn. Accordingly, the Court will not dismiss that cause of action pursuant to Rule 12(b)(6).

### 5. Plaintiff's Infliction of Emotional Distress Claim

As for Plaintiff's claim of negligent infliction of emotional distress, the Church Defendants assert that that claim must be dismissed because Plaintiff has failed to allege an essential element of that claim, *i.e.*, that the Defendants' conduct endangered her physical safety. *See Hart v. Child's Nursing Home Co., Inc.*, 298 A.D.2d 721, 723 (3rd Dep't 2002) ("[I]t is well settled that a claim for negligent infliction of emotional distress requires a showing that defendants' conduct unreasonably endangered plaintiffs' physical safety . . . .") (internal quotation marks and citation omitted); *see also Guiles v. Simser*, 804 N.Y.S.2d 904, 905 (N.Y. Sup. Ct. 2005) ("The elements necessary to recover damages for the negligent infliction of emotional distress include a showing of bodily harm or an endangerment of the plaintiff's physical safety.") (citations omitted). While the Amended Complaint does assert that Kennedy touched Plaintiff in a sexual way without her consent, there is no allegation that Plaintiff feared for her physical safety, faced bodily harm, or was threatened by Kennedy or any of the Church Defendants. Accordingly, no claim for negligent infliction of emotional distress has been stated.

Although in the Amended Complaint Plaintiff labeled her cause of action as one for *negligent* infliction of emotional distress, in her opposition to the Church Defendants' motion, she also asserts that the allegations of the Amended Complaint state a claim for *intentional* infliction of emotional distress. To the extent that Plaintiff is seeking to hold the Church Defendants vicariously liable for Kennedy's alleged intentional infliction of emotional distress, such a claim cannot stand, because

9

the wrongful conduct on Kennedy's part necessary to support the claim would be outside the scope of his employment as a priest and unrelated to the furtherance of the Church Defendants' business. Thus, the fact that "[the Church Defendants] themselves repeatedly state [that] Defendant Kennedy's actions are outrageous and disturbing," as Plaintiff points out (Plaintiff's Opposition Memorandum at 22), does not support the imposition of vicarious liability upon the Church Defendants.

To the extent that Plaintiff is asserting a claim of intentional infliction of emotional distress against the Church Defendants directly, on the basis of some sort of scheme of concealment of Kennedy's alleged wrongdoings or failure to warn those in Plaintiff's position of Kennedy's alleged propensities for sexual abuse, the Court will not dismiss that claim at this time, because, construing the factual allegations in Plaintiff's favor, she has arguably pleaded all of the elements of the intentional infliction of emotional distress cause of action. *See, e.g., Lee v. McCue*, 410 F. Supp. 2d 221, 226 (S.D.N.Y. 2006) (under New York law, the tort has four elements: (I) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress).

Therefore, Plaintiff's negligent infliction of emotional distress claim against the Church Defendants is dismissed, but her intentional infliction claim asserted directly against the Church Defendants is not.

### 6. Plaintiff's Breach of Fiduciary Duty Claim

The Church Defendants also seek dismissal of Plaintiff's claim for breach of fiduciary duty. Plaintiff's claim asserts that the "[d]efendants utilized their status and role as the plaintiff's

counselors, confessors and priests to obtain an unfair advantage over the plaintiff." Am. Compl. ¶ 67(b). The Church Defendants, however, assert that New York case law instructs that a fiduciary duty claim cannot survive in this case, because "[a]n inquiry into whether a cleric violated a fiduciary duty to a congregant would involve the court in the same excessive entanglement in religious affairs as an inquiry into whether the cleric violated a duty of care owed to the congregant," *Wende C. v. United Methodist Church, New York West Area*, 6 A.D.3d 1047, 1050 (4th Dep't 2004) (citing cases).

However, the New York Court of Appeals has not yet gone so far as to hold that a fiduciary duty may *never* exist between a religious body or cleric and a congregant. When the Appellate Division's decision in *Wende C.* came before the Court of Appeals, that Court concluded that the only claim made out was for clergy malpractice, not breach of fiduciary duty, and went on to say: "[W]e leave open for another day the question whether such a claim may arise between a cleric and a parishioner under very different circumstances, not present here." *Wende C. v. United Methodist Church, New York West Area*, 4 N.Y.3d 293, 299 (N.Y. 2005). *See also Zumpano v. Quinn*, 2006 WL 395229 (N.Y. Feb. 21, 2006) ("We recently left open the question whether a fiduciary relationship existed between a cleric and a congregant (citing *Wende*). It is likewise unnecessary to answer that question here.") (holding that "[e]ven if the Court were to assume that a fiduciary relationship existed between the parties during plaintiffs' infancy" and the diocesan defendants breached it, "plaintiffs still failed to demonstrate how that breach prevented them from bringing a timely action," so that equitable estoppel was inapplicable and plaintiffs' actions were time-barred).

11

Nonetheless, even if a fiduciary duty may exist between a religious body or cleric and a congregant in certain instances, in the case at bar Plaintiff has failed to make sufficient allegations to support the existence of such a relationship between Plaintiff and the Church Defendants. Plaintiff's allegations do not make out the existence of any sort of special relationship between the Church Defendants and Plaintiff beyond that general relationship between a church or religious body and a congregant. That general relationship is insufficient in law to support the finding of a fiduciary duty. *See, e.g., Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 795 (3d Dep't 2005) ("Where . . . a parishioner plaintiff seeks to establish the existence of a fiduciary relationship with an institutional church defendant, the plaintiff may not merely rely on the church's status in general, but must come forward with facts demonstrating that his or her relationship with the institution was somehow unique or distinct from the institution's relationship with other parishioners generally.") (citing cases). Therefore, to the extent Plaintiff is asserting a breach of fiduciary duty claim directly against the Church Defendants, that claim is dismissed.

Further, even if the Court were to assume that some sort of fiduciary relationship existed between Kennedy and Plaintiff,[5] and that Kennedy breached the fiduciary duty by his sexual misconduct towards Plaintiff, the Church Defendants are not vicariously liable for Kennedy's alleged breach of fiduciary duty, because, as discussed *supra*, Kennedy's alleged sexual transgressions are clearly outside the scope of his employment as a priest, and were not done in furtherance of the Church Defendants' business.

---

[5] *See Langford v. Roman Catholic Diocese of Brooklyn*, 271 A.D.2d 494, 501-04 (2nd Dep't 2000) (dissenting opinion) (in the situation where a member of the clergy has a special, counseling-type relationship with the congregant, the finding of the existence of a fiduciary duty may be justified).

12

B. **Rule 56**

1. **Standard of Review**

The Archdiocese and Egan have also moved for summary judgment in their favor on certain of Plaintiff's claims pursuant to Rule 56, Federal Rules of Civil Procedure. Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact; this burden is satisfied if the moving party can point to the absence of evidence necessary to support an essential element of the non-moving party's claim. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). If there is "any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party," then summary judgment should not be granted. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d. Cir. 1994). The substantive law will identify which facts are material. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

A party resisting summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.

P. 56(e). As Judge Motley aptly stated in *Eppendorf-Netheler-Hinz GmbH v. Enterton Co.*, 89 F. Supp. 2d 483, 485 (S.D.N.Y. 2000):

> [J]udges . . . [are not] required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party . . . . [I]n every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

(citing and quoting *Anderson*, 477 U.S. at 251). *See also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) ("The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture.") (citations and internal quotation marks omitted). Thus, the party resisting summary judgment must "come forward with specific facts to show there is a factual question that must be resolved at trial." *Donahue v. Artisan*, No. 00 Civ. 8326, 2002 WL 523407, at *1 (S.D.N.Y April 8, 2002).

### 2. Propriety of Summary Judgment

The Archdiocese and Egan move for summary judgment in their favor. The third Church Defendant does not join in that motion. In support of their summary judgment motion, the Archdiocese and Egan rely upon the affidavits of Monsignor O'Connor and Father Rutler. The contents of those affidavits were summarized *supra*, but to reiterate in the present context: O'Connor states that he had never even heard of Kennedy until Bouchard made her allegations in 2004, that the Archdiocese never had any sort of employment relationship with Kennedy, and that the Archdiocese never had and still has no knowledge of Kennedy's alleged past of sexual misconduct.

Rutler states that he never saw or met Kennedy, who was apparently visiting at the Church of Our Savior before Rutler came to that parish. Rutler also states that the parish pastor is not required to seek approval of the Archdiocese or any other person or entity before issuing checks of the sort that were issued to Kennedy by the Church of Our Savior. While Egan has not submitted his own affidavit, the statements and denials contained in the O'Connor and Rutler affidavits lend support to the contention of the Archdiocese and Egan that they are entitled to summary judgment because there is no basis in law for holding either of them responsible for the alleged misconduct of Kennedy.

Plaintiff has submitted an affidavit in opposition to this motion for summary judgment. Plaintiff asserts that O'Connor's affidavit is "not thoroughly accurate or complete," and that O'Connor apologized to Plaintiff and admitted that "the New York Archdiocese made many mistakes in keeping track of visiting priests, including with Fr. Kennedy." Affidavit of Angie Bouchard, dated January 28, 2006, ¶¶ 11-12. Plaintiff also claimed in her affidavit that the Archdiocese offered to pay for her medical or psychological treatment, and indeed did pay for certain treatment, which was necessitated as a result of the alleged abuse by Kennedy, *id.* ¶ 10; she did not, however, provide any documentary evidence in support of this claim.

What lies at the heart of the summary judgment motion on behalf of the Archdiocese and Egan is those Defendants' potential liability for the negligent hiring, retention, supervision, and/or failure to warn an alleged victim like Plaintiff. For the reasons stated in Part I.A.4. of this Discussion, that claim survived the Church Defendants' Rule 12(b)(6) motion to dismiss. Liability will attach on such a claim if the Archdiocese, acting though its responsible officers or agents, or Egan himself, "knew or should have known of [Kennedy's] propensity for the conduct which caused

the injury." *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 161 (2nd Dep't. 1997).

Evidence with respect to the existence *vel non* of such knowledge, actual or constructive, on the part of the Archdiocese and Egan lies particularly within the possession, custody or control of the Church Defendants. Notwithstanding that reality, Plaintiff Bouchard still bears the burden of presenting affirmative and admissible evidence to defeat the summary judgment motion of the Archdiocese and Egan, supported as that motion is by the affidavits of O'Connor and Rutler. The Supreme Court laid down the ground rules for such cases in *Anderson*, 477 U.S. at 257:

> [T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, *so long as the plaintiff has had a full opportunity to conduct discovery*.

(emphasis added). Where factual issues are decisive, it is generally considered preferable for the parties to complete discovery – depose every witness, produce every document – before one party or the other moves for summary judgment. Where, as here, the probative evidence is almost exclusively in the possession of the moving party, giving the non-moving party "a full opportunity to conduct discovery" is an exercise in simple fairness.

Accordingly the present motion of the Archdiocese and Egan for summary judgment is denied, without prejudice to those Defendants' renewal of their motion after completion of discovery (none having been accomplished to date). The Court will make a separate Order of Reference to a Magistrate Judge for general supervision of all pre-trial matters, including the scheduling of discovery and the adjudication of any disputes that may arise during its course. Given the tenor of some of the prior correspondence of Plaintiff's counsel in this case, the Order of Reference will

provide that any depositions of officers, agents or employees of the Church Defendants, clerical or lay, will take place in the Courthouse, in the presence and under the supervision of the Magistrate Judge.[6]

### C. The Church Defendants' Request to Strike Pursuant to Rule 12(f)

As mentioned above, in addition to moving for dismissal of and/or for summary judgment on Plaintiff's claims, the Church Defendants request, pursuant to Federal Rule of Civil Procedure Rule 12(f), that the Court strike from the Amended Complaint certain material that the Church Defendants allege is scandalous and immaterial. Rule 12(f) states, in part: "Upon motion made by a party . . . or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

However, given the conclusions reached above, I decline to strike any portion of Plaintiff's pleadings. Although certain of Plaintiff's allegations do border on inflammatory rhetoric, *i.e.*, "This lawsuit is as much about defendant Egan's immoral and illegal acts and conspiracy or cover-up of repeated and criminal activity by the defendants and defendant Kennedy's omissions or deceptions to law enforcement as it is about the sexual abuse of the actual perpetuating defendant Kennedy," Am. Compl. ¶ 62, the essence of these sorts of allegations is that the Church Defendants knew or should have known of Kennedy's proclivities towards sexual abuse and yet still hired him, failed to supervise him or warn those with whom he would have contact, and/or actively covered up Kennedy's sexual misconduct. Such allegations state necessary elements of certain of Plaintiff's

---

[6] During discovery the Defendants may of course depose the Plaintiff, and in the course of that deposition develop time-line evidence bearing upon the possible viability of a defense based upon the statute of limitations.

claims against the Church Defendants. Although the Church Defendants may (and do) strongly deny Plaintiff's allegations that they had or should have had knowledge of Kennedy's alleged disposition towards sexual misconduct, the Court declines to strike those allegations from the Amended Complaint.

## II. Plaintiff's Motion

Plaintiff, in addition to opposing the Church Defendants' motion, has moved for a hearing, for the imposition of sanctions, and/or for an award of attorney's fees. Plaintiff asserts that the imposition of sanctions and attorney's fees is warranted "due to the frivolous and possibly disingenuous arguments or assertions by the [Church Defendants]," and it is "these issues" upon which Plaintiff requests a hearing. Declaration of John A. Aretakis, Plaintiff's counsel, ¶ 1. However, nowhere in Plaintiff's motion papers is it clearly alleged what sort of conduct on the part of the Church Defendants or their counsel Plaintiff believes to be sanctionable. I glean from the Declaration that Plaintiff believes the Church Defendants are withholding information relating to their knowledge concerning Kennedy, and that the Court should hold a hearing, with testimony from "persons with knowledge," in order to arrive at the truth. *See id.* ¶¶ 4-8. In particular, Plaintiff's counsel asserts that Father Rutler, who is the parish pastor at the Church of Our Savior, was present when Kennedy worked at the church, and "presumably has personal knowledge that directly contradicts the Affidavit of Monsignor Desmond O'Connor"; Plaintiff's counsel believes "the lack of an Affidavit from Fr. Rutler . . . deserves the consideration of this Court." *Id.* ¶¶ 5-6.

to have provided false information or perjured affidavits. In fact, after the service of Plaintiff's motion, the Church Defendants did produce an affidavit from Rutler, which does not contradict any information previously provided by the Church Defendants.

Nor would any useful purpose be served by holding a hearing before this Court at this time. The proper way for Plaintiff to explore and develop the facts pertinent to the Church Defendants is though the discovery the Court directs in Part I.B., *supra*. The Church Defendants' motion for summary judgment may then be renewed; to the extent it fails, the issues will be resolved by a plenary trial. As for sanctions, the principal procedural vehicle is Fed. R. Civ. P. 11. Plaintiff at bar has not made out a case for Rule 11 sanctions on the present record; nor has she followed the procedures mandated by the Rule.

Accordingly, Plaintiff's motion is denied in its entirety.

## CONCLUSION

For the foregoing reasons, that portion of Church Defendants' motion seeking dismissal under Rule 12(b)(6), Federal Rules of Civil Procedure, is denied in part and granted in part. The motion on behalf of Defendants Archdiocese and Egan for summary judgment is denied on the present record, without prejudice to renewal following completion of discovery. Plaintiff's cross-motion is denied.

It is SO ORDERED.

Dated: New York, New York
May 18, 2006

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE