```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

ANGIE BOUCHARD,                         :

                  Plaintiff,            :

      -against-                         :    04 Civ. 9978 (CSH)(HBP)

NEW YORK ARCHDIOCESE, CHURCH            :    OPINION
OF OUR SAVIOR, FR. KENNEDY, FR.              AND ORDER
"JOHN DOE," "JOHN DOE"                  :
RELIGIOUS ORDER and SRI
LANKA DIOCESE                           :

                  Defendants.           :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I.  Introduction

Former defendant Cardinal Edward Egan moves for a protective order pursuant to Fed.R.Civ.P. 26(c) precluding plaintiff from taking his deposition in this matter (Docket Item 47). Plaintiff also moves for a protective order pursuant to Fed.R.Civ.P. 26(c) precluding defendants from continuing the deposition of plaintiff (Docket Item 55).

For the reasons set forth below, Cardinal Egan's motion is granted in part; plaintiff's motion is denied.

II. Facts

This is a diversity action in which plaintiff alleges that a Roman Catholic priest visiting New York from Sri Lanka,

Fr. Fernando Kennedy, sexually assaulted her and committed other torts against her during the summer of 2001 while he was temporarily working at the Church of Our Savior ("COOS"), a Roman Catholic parish in Manhattan within the Archdiocese of New York (the "Archdiocese").  The allegations of the complaint are summarized in detail in the May 18, 2006 opinion of the Honorable Charles S. Haight, United States District Judge, which granted in part and denied in part defendants' motions to dismiss the complaint and for summary judgment.  Bouchard v. New York Archdiocese, 04 Civ. 9978 (CSH), 2006 WL 1375232 (S.D.N.Y. May 18, 2006) ("Bouchard I").  Familiarity with Bouchard I is assumed.

Cardinal Egan's motion arises out of plaintiff's efforts to depose him in this matter.[1]  Cardinal Egan claims that he is entitled to a protective order because (1) he claims he had never heard of Fr. Kennedy prior to the commencement of this

---

[1] Although Cardinal Egan was a defendant when his motion for a protective order was originally made, Judge Haight has subsequently granted a motion for reconsideration and granted summary judgment dismissing the complaint as to him. Bouchard v. New York Archdiocese, 2006 WL 9978 (CSH), 2006 WL 3025883 (S.D.N.Y. Oct. 24, 2006) ("Bouchard II").  In Bouchard II, Judge Haight concluded that to the extent the complaint asserted a claim for intentional infliction of mental distress against Cardinal Egan, the claim was time-barred.  To the extent the complaint asserted other claims against Cardinal Egan, Judge Haight concluded that there was no evidence that Cardinal Egan knew or could have known that Fr. Kennedy had a propensity to engage in the conduct alleged by plaintiff and, therefore, no basis for a finding of liability on the basis of negligent hiring, supervision or retention.  Judge Haight expressly noted that his decision in Bouchard II was without prejudice to the instant motion.  2006 WL 3025883 at *8 n.10.

action, (2) his position is analogous to that of high corporate or government executives who are frequently granted protective orders precluding their depositions where it is shown that they lack personal knowledge of the events in question and there is no showing that the executive or official has unique knowledge, and (3) there is a high probability that any deposition of Cardinal Egan would be used to humiliate and embarrass him, given the behavior of plaintiff's counsel in other cases involving allegations of sexual misconduct by members of the clergy of the Roman Catholic Church.  See generally Hoatson v. New York Archdiocese, 05 Civ. 10467 (PAC), 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007).  In addition to other material, Cardinal Egan has submitted an affidavit in support of his motion in which he states, in pertinent part:

> 2.  I have been the Archbishop [of the Archdiocese of New York] since June 2000, and was elevated to the College of Cardinals in February 2001.  As the Archbishop, I am the head of the Archdiocese, which encompasses ten counties within the State of New York -- New York, Bronx, Richmond, Dutchess, Orange, Putnam, Rockland, Sullivan, Ulster, and Westchester.
>
> 3.  The Archdiocese's most recent statistical overview, as of late 2005, reveals that there are approximately 405 parishes, 1,536 priests, 3,028 nuns, 209 diocesan and parish elementary schools, 23 diocesan and parish high schools, and 5400 lay teachers within the Archdiocese.  This number does not include visiting priests.  Additionally, the same statistical overview indicates that there are more than 2.5 million Roman Catholics within the boundaries of the Archdiocese.
>
> 4.  When priests from other dioceses and from religious orders visit parishes within the Archdiocese,

> there is virtually never a reason for them to be
> brought to my attention.  I never meet or speak with
> the vast majority of priests who visit parishes within
> the Archdiocese.
>
> 5.  I am aware that Angie Bouchard has filed a
> lawsuit alleging improper conduct by one Father Ken-
> nedy, who is alleged to have visited a parish within
> the Archdiocese from Sri Lanka some time in 2001.  I
> can categorically state that I have never met, sanc-
> tioned or authorized Father Kennedy, nor did I have
> anything to do with his alleged presence or purported
> service in the parish.  Until Ms. Bouchard complained
> to the Archdiocese in 2004, I had never even heard of
> Father Kennedy.  Finally, I do not know Ms. Bouchard,
> and am only aware of her because of the allegations she
> has made.
>
> 6.  I have absolutely no personal knowledge of,
> and had no personal involvement in, the acts alleged in
> the Plaintiff's lawsuit.

(Affidavit of Cardinal Edward Egan, sworn to Aug. 24, 2006, annexed as Exhibit A to the Declaration of Daniel R. Alonso, dated Sept. 1, 2006 ("Alonso Decl."))

Plaintiff's motion for a protective order precluding the continuation of her deposition is based on allegedly abusive conduct by defendants' counsel at the first session of her deposition.  In support of her motion, plaintiff cites only six instance of alleged misconduct by defense counsel; the instances of alleged misconduct cited by plaintiff span a total of 40 pages out of a 303-page transcript.

- At pages 44-50 and 56-65 of the Transcript of Plaintiff's Deposition, conducted on September 8, 2006 ("Bouchard Dep. Tr."), counsel for COOS re-

sisted suggestions from plaintiff's counsel to defer questioning concerning incidents of sexual abuse by a family member that plaintiff suffered as a child and a teenager.  However, at pages 65-66 of the transcript, counsel for COOS agreed to defer questioning concerning this subject.

- At pages 111-13, counsel for plaintiff objected to the fact that counsel for COOS and the Archdiocese conferred from time to time during the former's examination of plaintiff and that some of these discussions appeared to involve the interpretation of unspecified discovery provisions of the Federal Rules of Civil Procedure.  Although plaintiff's counsel noted these conferences on the record, he also admitted that he was not making any "sinister" implications (Bouchard Dep. Tr. at 111) and that counsel for the defendants were permitted to confer with each other (Bouchard Dep. Tr. at 114).

- At pages 117-18, after the colloquy concerning conferences between defendants' counsel, counsel for COOS asked plaintiff whether she was very upset and whether she had cried during the deposition.

- At pages 205-06, plaintiff was asked to describe in detail one of the instances of Fr. Kennedy's misconduct that involved plaintiff's touching certain body parts.

- At pages 216-228, counsel for COOS asked plaintiff questions concerning her enjoyment of sexual relations both before and after her meeting Fr. Kennedy. He also began to question plaintiff about acts of sexual abuse committed by her uncle while she was a child and adolescent. The transcript reflects that plaintiff was clearly upset by this questioning, and at one point, counsel for COOS sought to excuse plaintiff to confer privately with her counsel; plaintiff's counsel refused to do so (Bouchard Dep. Tr. at 221-23).

III. Analysis

    A. Cardinal Egan's Motion for a Protective Order

Fed.R.Civ.P. 26(c) authorizes a federal court to issue "any order which justice requires to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden expense." Cardinal Egan argues that

a protective order is justified here by the first three factors cited in the rule.

Cardinal Egan's motion requires balancing of the broad discovery permitted by the Federal Rules of Civil Procedure with the court's obligation to ensure that discovery is not misused as a tool for oppression or harassment.

> The Federal Rules set very liberal limits on the scope of discovery. A party may inquire about "any matter, not privileged, that is relevant to [a] claim or defense[,]" and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b)(1). "[H]ighly-placed executives are not immune from discovery. 'The fact that [an executive] has a busy schedule' is [ ] not a basis for foreclosing otherwise proper discovery.'" Consolidated Rail Corp. v. Primary Industries Corp., No. 92 Civ. 4927, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (quoting CBS, Inc. v. Ahern, 102 F.R.D. 820, 822 (S.D.N.Y. 1984)). Even where, as in this case, a high-ranking corporate officer denies personal knowledge of the issues at hand, this "claim . . . is subject to testing by the examining party." Consolidated Rail Corp., 1993 WL 364471, at *1 (citing Amherst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 122 (D. Conn. 1974)).
>
> Nevertheless, discovery is not boundless, and a court may place limits on discovery demands that are "unreasonably cumulative or duplicative," or in cases where
>
>> the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.
>
> Fed.R.Civ.P. 26(b)(2)(C). Likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery of corporate execu-

>    tives.  See Consolidated Rail Corp., 1993 WL 364471, at
>    *1; Arkwright Mutual Insurance Co. v. National Union
>    Fire Insurance Co., No. 90 Civ. 7811, 1993 WL 34678, at
>    *2 (S.D.N.Y. Feb. 4, 1993).  Unless it can be demon-
>    strated that a corporate official has "some unique
>    knowledge" of the issues in the case, "it may be appro-
>    priate to preclude a[ ] deposition of a highly-placed
>    executive" while allowing other witnesses with the same
>    knowledge to be questioned.  Consolidated Rail Corp.,
>    1993 WL 364471, at *1 (citations omitted).

Burns v. Bank of America, 03 Civ. 1685 (RMB)(JCF), 2007 WL 1589437 at *3 (S.D.N.Y. June 4, 2007); see also RxUSA Wholsale, Inc. v. McKesson Corp., CV-06-4343 (DRH)(AKT), 2007 WL 1827335 at *4 (E.D.N.Y. June 25, 2007).

Cardinal Egan's affidavit satisfies his initial burden of demonstrating a lack of relevant knowledge.  See Penn Group, LLC v. Slater, 07 Civ. 729 (MHD), 2007 WL 2020099 at *13 (S.D.N.Y. June 13, 2007) ("[T]he proponent of a protective order, plaintiff bears the burden to demonstrate good cause for its proposed limitations . . . ."); Infosint S.A. v. H. Lundbecj A.S., 06 Civ., 2869 (LAK)(RLE), 2007 WL 1467784 at *2 (S.D.N.Y. May 16, 2007) ("The party seeking a protective order has the burden of demonstrating that good cause exists for issuance of the order." (internal quotation marks omitted)).  The only evidence plaintiff offers in opposition is the affidavit of Fr. Robert Hoatson, a priest who has never worked in the Archdiocese of New York, who concludes that Cardinal Egan must have known something about Fr. Kennedy's background.  Specifically, Fr. Hoatson states:

>    4. Cardinal Egan must grant priestly faculties[2] to any and all priests who serve in the Archdiocese for a period of time. All visiting priests must be "investigated" by the Archdiocese and granted permission specifically by Cardinal Egan to serve in his Archdiocese.
>
>    5. The priests must receive letters of "appointment" from Cardinal Egan. The letters carry the length of stay of the priests and their specific faculties. In sum, Cardinal Egan was Fr. Kennedy's employer, contrary to the defendants' Memorandum of Law.

(Affidavit of Fr. Robert M. Hoatson, sworn to September 8, 2006, at ¶¶ 4-5, annexed to Plaintiff's Notice of Cross Motion for a Protective Order).

I find that Fr. Hoatson's affidavit is insufficient to rebut Cardinal Egan's sworn statement that he knew nothing about Fr. Kennedy until plaintiff filed her complaint. As noted by Judge Haight in Bouchard II, "Fr. Hoatson never served at the New York Archdiocese, let alone at the time pertinent to the action. Accordingly, he has no personal knowledge of the practices and procedures of the Archdiocese in general and Cardinal Egan in particular with respect to the employment and supervision of a visiting priest such as Fr. Kennedy in 2001." Bouchard II, 2006 WL 3025883 at *7. Thus, Fr. Hoatson's beliefs about what Cardi-

---

[2]"Faculties are means by which the bishop of a diocese, or archbishop, confers permission to a visiting priest who labors in the diocese for the salvation of souls to hear confessions, say Mass, preach, and administer the sacraments of the Roman Catholic Church. The granting of faculties is a purely religious function." Bouchard I, 2006 WL 1375232 at *1 n.1.

9

nal Egan must have known or must have done are nothing but speculation.

Apart from Fr. Hoatson's affidavit, plaintiff offers no other evidence to rebut Cardinal Egan's statement that he lacks relevant, material information.  There is no documentary evidence suggesting knowledge on Cardinal Egan's part, nor is there any circumstantial evidence that would support an inference of knowledge.  Accordingly, the issuance of a protective order is warranted.

However, I believe that the issuance of a broad protective order precluding any discovery from Cardinal Egan goes too far.  Given the fact that knowledge is frequently proved circumstantially, precluding all discovery of a highly placed business, government or clerical official based solely on their unchallenged denial of knowledge sets the bar for a protective order too low.  As the authorities cited above demonstrate, parties to an action are ordinarily entitled to test a claim by a potential witness that he has no knowledge.

I believe the conflicting interests are appropriately balanced here by permitting plaintiff to depose Cardinal Egan by written questions in the first instance.  See Fed.R.Civ.P. 31. This vehicle will permit a limited probing of Cardinal Egan's statements, minimize the temporal burden of the examination and ensure that the deposition will not be used as a vehicle to

embarrass or harass Cardinal Egan.  Plaintiff may serve up to 25 questions on Cardinal Egan concerning the claims and defenses in this matter.  Cardinal Egan shall have 21 days to respond to those questions; in responding to the questions, Cardinal Egan may assert any objection that could be asserted in response to an interrogatory except an objection based on Local Civil Rule 33.3.  Subparts of questions will count against the numerical limit as will improper question to which valid objection is made.  My Order is without prejudice to a further application to depose Cardinal Egan by oral examination if his answers to plaintiff's written questions demonstrate that there is some valid basis for an oral examination.[3]

    B.   Plaintiff's Motion
       <u>for a Protective Order</u>

I have reviewed the entire transcript of plaintiff's deposition and conclude that plaintiff's motion for a protective order precluding the continuation of her deposition should be denied.

---

[3] Since Cardinal Egan is no longer a party to this action, plaintiff will now have to serve a subpoena to compel his deposition. <u>Gil v. County of Suffolk</u>, CV 06-1683 (LDW)(ARL), 2007 WL 2071701 at *1 (E.D.N.Y. July 13, 2007).  Cardinal Egan's counsel should, of course, consider whether he will accept process on the Cardinal's behalf or waive service of process altogether.

There is absolutely nothing in the six instances of alleged misconduct cited by plaintiff's counsel that suggests defendants' counsel was attempting to embarrass or humiliate plaintiff. Admittedly, the questioning covered sensitive subjects, but that was a necessary consequence of plaintiff's allegations. The complaint in this matter alleges extremely disturbing conduct, namely the abuse of a position of trust by a clergyman for his personal sexual gratification. Among other things, plaintiff alleges that Fr. Kennedy's misconduct had its genesis in a discussion initiated by Fr. Kennedy concerning plaintiff's abuse as a child and later as an adolescent at the hands of an uncle. Moreover, the misconduct attributed to Fr. Kennedy allegedly involved plaintiff's disclosure to him of prior instances of sexual abuse of plaintiff by other individuals. Given these allegations, plaintiff's deposition necessarily involved sensitive and distasteful subject matter, and defendants' questioning of plaintiff concerning these subjects was unavoidable.

Plaintiff has not cited, and my own review of the transcript has not disclosed, any conduct by defendants' counsel that rises to the level of abuse. Plaintiff was afforded the opportunity to take breaks from the questioning (Tr. 221-23) and, in response to a request from plaintiff, deferred questioning concerning the alleged abuse by plaintiff's uncle to the after-

noon session of the deposition (Tr. 65). Defendants' counsel did not dwell unnecessarily on the alleged instances of sexual misconduct by Fr. Kennedy, nor, with a few minor exceptions, did they improperly delve into plaintiff's sexual history. Clearly, there were some steps defendants' counsel could have taken to be more accommodating to plaintiff. For example, defendants' counsel could have acceded to plaintiff's request that her husband be permitted to attend the deposition. However, their failure to do so does not rise to the level of abusive conduct.[4] Moreover, despite the fact that I had a conference call with counsel during the course of the deposition, plaintiff's counsel never raised this issue, or any other conduct by defendants, as being abusive. There was a substantial amount of unnecessary colloquy during the deposition concerning, among other things, the fact that defendants' counsel conferred during the deposition. This colloquy was, however, invariably initiated by plaintiff's counsel. Although defendants' counsel, unfortunately, returned the "favor," at one point refusing to provide plaintiff's counsel with a photocopy of an exhibit because

---

[4]Although defendants were within their rights in refusing to consent to plaintiff's husband's attending the deposition, had all parties consented to his presence, there would have been no defect in the proceedings. Nothing in the Federal Rules of Civil Procedure required his exclusion had all counsel agreed that he could sit in.

13

plaintiff's counsel would not say "please" (Tr. 124), this conduct cannot be fairly characterized as abusive to plaintiff.

Since I conclude that there was no misconduct at plaintiff's deposition, her application for a protective order is denied.

IV. Conclusion

Accordingly, for all the foregoing reasons, Cardinal Egan's motion for a protective order is granted to the extent that any questioning of Cardinal Egan shall be done by written questions and shall be limited to a total of 25 questions. In addition, this Order is without prejudice to a further application by plaintiff to conduct the oral examination of Cardinal Egan upon a showing of good cause.

Plaintiff's application for a protective order is denied in all respects.

Dated: New York, New York
September 19, 2007

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

John A. Aretakis, Esq.
353 East 54th Street
New York, New York 10022

14

Paul J. Curran, Esq.
Daniel R. Alonso, Esq.
Kaye Scholer, LLP
425 Park Avenue
New York, New York  10022

Glen Feinberg, Esq.
Wilson, Elser, Moskowitz,
   Edelman & Dicker LLP
3 Gannett Drive
New York, New York  10017-5639

15